IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

BRANDY COLLEEN MOORE, )
)
      Plaintiff, )
)
v. )   Case No. CIV-20-326-RAW-KEW
)
KILOLO KIJAKAZI,[1] )
Acting Commissioner of the Social )
Security Administration, )
)
      Defendant. )

## REPORT AND RECOMMENDATION

The claimant Brandy Colleen Moore requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-two years old at the time of the administrative hearing (Tr. 31, 150). She completed high school and two years of college, and has previously worked as a shift manager, assistant manager, and cashier (Tr. 24, 165). The claimant alleges that she has been unable to work since July 1, 2016, due to tachycardia, glaucoma, GERD, congenital hemangioma, hyperlipidemia, diabetes mellitus, degenerative joint disease involving multiple joints, asthma, hypothyroidism, and sleep apnea (Tr. 164).

## Procedural History

On August 11, 2018, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Deirdre O. Dexter conducted an administrative hearing and determined in a written opinion dated December 24, 2019, that the claimant was not disabled from July 1, 2016 through September 30, 2019 (Tr. 12-26). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found at step two that the claimant had the severe impairments of degenerative disc disease,

osteoarthritis of multiple sites, diabetes mellitus, obesity, hearing loss, and asthma, as well as the nonsevere impairments of congenital hemangioma, thyroid disorder, hypertension, mild glaucoma, GERD, hyperlipidemia, left foot bone cyst, right arm edema, obstructive sleep apnea, depression, and anxiety (Tr. 14-15).  She found the claimant did not meet a Listing, then determined at step four that the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), except she could lift/carry/push/pull up to ten pounds frequently and twenty pounds occasionally, sit up to six hours in an eight-hour workday, and stand/walk up to three hours in an eight-hour workday.  Additionally, she found that the claimant could only frequently stoop, kneel, crouch, or crawl; occasionally climb ramps or stairs; and never climb ladders, ropes, or scaffolds.  Finally, she found that the claimant could work around moderate noise, but that any job should not involve concentrated exposure to dust, odors, fumes, or pulmonary irritants (Tr. 17-18).  The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was other work in the economy that she could perform, *e. g.*, clerical sorter, scanner, and optical assembler (Tr. 24-25).

## Review

The claimant contends that the ALJ erred by:  (i) improperly evaluating the evidence at step two, and (iii) failing to properly identify jobs at step five.  Neither of these contentions have merit, and the decision of the Commissioner should therefore be affirmed.

The relevant medical evidence reflects an MRI of the cervical spine on October 19, 2016, showing a far right lateral disc protrusion at C6-7 resulting in moderate to severe

narrowing of the right neural foramen, and straightening of cervical lordosis possibly secondary to patient positioning or muscle spasm (Tr. 359).  A subsequent MRI of the cervical spine performed on January 4, 2019 revealed trace degenerative change with moderate stenosis of the right foraminal recess and neural foramen (Tr. 672).  The claimant had an incisional hernia and underwent surgery in 2016.  In November 2016, the claimant had a twenty-pound weight-lifting limitation for five weeks following her surgery (Tr. 561).  She underwent a hernia repair in September 2017, then went back to the hospital ten days following the hernia repair with post-operative state tachycardia but was discharged after fluids because there were no beds and upon the claimant's reports of feeling better (Tr. 289-299, 303).

General treatment notes from the Cardiology Clinic of Muskogee reflect that treatment providers occasionally (but not always) made findings related to swelling in the extremities, limited range of motion of both hips, joint pain, and periodic depression, and/or anxiety (Tr. 307, 402, 442, 532, 593, 602, 610, 614, 619, 623, 632, 636, 346).  X-rays of her bilateral knees in January 2018 revealed early degenerative changes of the right knee but an unremarkable left knee (Tr. 475).

The record does not contain exams by consulting physicians.  State physicians determined initially and upon review that the claimant could perform light work, except that she could only occasionally climb ramps/stairs/ladders/ropes/scaffolds (Tr. 71-72).  As to her mental impairments, state reviewing physicians found she had either mild or no impairments in the four functional areas and concluded that her mental impairments were not severe (Tr. 68-69, 81-82).

At the administrative hearing held in November 2019, the claimant testified, *inter alia*, that she started using a cane about a year prior but that she did not have a prescription for it (Tr. 43-44). She stated that she used the cane to prevent falling, and that she had talked with a doctor about following a "couple of times" (Tr. 44). She also testified that she had difficulty moving around her own house due to problems with her back, legs, knee, and dizziness, which had been ongoing for several years (Tr. 46).

In her written decision at step four, the ALJ summarized the claimant's hearing testimony, as well as nearly every medical record available reflecting both physical and mental impairments. As relevant to this appeal, the ALJ referenced the claimant's report of using a cane but noted that she did not have a prescription for a cane, and further cited notations referencing the claimant's anxious/depressed moods, her congenital hemangioma, limited range of motion of the hips, and objective x-ray and tomography testing of the back and lower extremities. She likewise noted findings related to the claimant's gait, mobility, asthma, and obesity (Tr. 18-24). She found, however, that the claimant consistently had normal tone and motor strength of the musculoskeletal system, and that radiology of her pelvis and hips were unremarkable even after examinations finding limited range of motion (Tr. 22). She further noted that the medical opinion evidence did not indicate that the claimant's weight caused further limitations on her ability to work (Tr. 23). She was not persuaded by the state reviewing physicians who found the claimant could perform a slightly limited range of light work because they did not examine her or have the complete longitudinal records; she concluded that sedentary work was more appropriate (Tr. 23-24). She found, however, that the state reviewing physicians were

persuasive as to her mental impairments, noting the claimant never sought out a mental health provider and primary care records found she had good judgment and normal recent/remote memory (Tr. 24). The ALJ thus concluded that there was work the claimant could perform and she was therefore not disabled (Tr. 24).

The claimant first contends that the ALJ should have found her congenital hemangioma, anxiety, and depression to be severe impairments. As to her anxiety and depression, she asserts that treatment notes recorded her as anxious and/or depressed twelve time "throughout the years" and that she was on mental health medication. Additionally, she contends that her congenital hemangioma contributed to her edema and caused her problems with being on her feet. Even assuming that the ALJ erred in failing to find these to be severe impairments, such error has long been considered harmless, where, as here, the ALJ found the claimant had numerous other severe impairments, which obligated her to then consider all of the claimant's impairments (severe or otherwise) in subsequent stages of the sequential evaluation, including the step four assessment of the claimant's RFC. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. . . . [T]he ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [citations omitted].

It is unclear whether the claimant contends that the ALJ failed to consider these impairments throughout the sequential evaluation, but as discussed below, the undersigned

Magistrate Judge finds that the ALJ did consider them. An RFC has been defined as "what an individual can still do despite his or her limitations." Soc. Sec. R. 98-6p, 1996 WL 374184, at *2 (July 2, 1996). It is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id*. This includes a discussion of the "nature and extent of" a claimant's physical limitations including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)." 20 C.F.R. §§ 404.1545(b), 416.945(b). Further, this assessment requires the ALJ to make findings on "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" and to "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Soc. Sec. R. 98-6p, 1996 WL 374184, at *1, 7. Here, the ALJ has fulfilled her duty.

In her written opinion, the ALJ specifically summarized records including notations where the claimant had an anxious/depressed mood upon exam, as well as references to the claimant's limited range of motion of the hips, edema, and hemangioma (Tr. 19-23). Contrary to the claimant's arguments, the undersigned Magistrate Judge finds that the ALJ discussed all the evidence in the record and her reasons for reaching the RFC. *Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific,

affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). The evidence does not reflect further limitations related to any of the claimant's impairments (severe or nonsevere), and the ALJ clearly considered them when she pointed to the evidence related to them, then assessed the opinion evidence in relation to all of the objective evidence. Although the claimant contends that she *should* have been assessed a moderate limitation in concentration, persistence, and pace in light of her anxiety and depression, the claimant has pointed to no medical documentation providing further limitations other than her own reports. Because she points to no evidence other than her own assertions, the undersigned Magistrate Judge declines to find an error here. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense. . . . [W]e cannot insist on technical perfection.").

The claimant nevertheless asserts that the evidence does not support a finding that she can perform work at the assigned RFC level in light of her impairments and that she cannot perform the jobs identified at step five. Mostly, the claimant asserts that the ALJ "should have" made different findings. For example, she contends, again, that the ALJ should have found her congenital hemangioma, anxiety, and depression as severe impairments imposing limitations on her RFC at step four. But as discussed above, the

undersigned Magistrate Judge finds that substantial evidence supports the ALJ's determination that the claimant can perform the above-listed RFC. The claimant additionally contends that she cannot perform the jobs identified at step five because she uses a cane to ambulate. However, the ALJ specifically discussed the claimant's use of a cane *and* the records discussing her gait and obesity, correctly noting in her opinion that the cane had not been prescribed. Moreover, the record contains no discussion of the claimant's use of a cane. The longitudinal evidence in the record (both prior to and after the alleged onset date) does not reflect further limitations, and the ALJ clearly considered *all* the evidence in the record because she noted the claimant's testimony and extensively summarized the treatment notes and opinion evidence. *Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). *See also* Soc. Sec. Rul. 19-2p, 2019 WL 2374244, at *4 (May 20, 2019) ("We will not make general assumptions about the severity or functional effects of obesity combined with another impairment(s). Obesity in combination with another impairment(s) *may or may not* increase the severity or functional limitations of the other impairment.") (emphasis added). Furthermore, the claimant has pointed to no *medical documentation* further limiting how long she can walk or even prescribing a cane; rather, she asserts that her reports of further limitation required the ALJ to incorporate them. While a prescription for a cane is not necessary to require

consideration in the RFC, here the claimant has again pointed to *no evidence* other than her own assertions, and the undersigned Magistrate Judge therefore declines to find an error. *See Staples v Astrue*, 329 Fed. Appx. 189, 191-192 (10th Cir. 2009) ("The standard described in SSR 96-9p does not require that the claimant have a prescription for the assistive device in order for that device to be medically relevant to the calculation of [his] RFC. Instead, [he] only needs to present medical documentation establishing the need for the device. The ALJ therefore erred in relying on [the claimant's] lack of a prescription for a cane."). *Cf. Garcia v. Astrue*, 2012 WL 4754919, at *8 (W.D. Okla. Aug. 29, 2012) ("Plaintiff's mere suggestion that a 'slow' gait might adversely affect his ability to perform the standing and walking requirements of light work is not supported by any authority.").

Finally, the claimant contends that she cannot perform the job of scanner (one of three jobs identified by the ALJ at step five) because it requires a GED reasoning level of 3. *See* DICOT § 249.587-018. However, the RFC in this case contains no limitations to simple or unskilled work that might necessitate an error as to the reasoning level. The claimant's assertions that she cannot perform a specific job, standing alone, are insufficient to challenge a job identified at step five. The claimant's final contention is therefore without merit. In essence, the claimant asks the Court to reweigh the evidence in her favor, which the Court cannot do. *See Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000) ("In conducting our review, we may neither reweigh the evidence nor substitute our judgment for that of the Commissioner.") (*citing Casias*, 933 F.3d at 800).

The ALJ specifically noted every medical record available in this case, gave reasons for her RFC determination, and ultimately found that the claimant was not disabled. *See*

*Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). The undersigned Magistrate Judge therefore finds no error. *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (*citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946). Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 26th day of August, 2022.

_____
**KIMBERLY E. WEST**
**UNITED STATES MAGISTRATE JUDGE**